FILED
2018 Aug-24 AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ALEJANDRO TOMAS, | ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action Number |
| BAYERISCHE MOTOREN WERKE AG, ET AL | ) 5:17-cv-01664-UJH-AKK ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Bayerische Motoren Werke AG's ("BMW AG") motion to dismiss Alejandro Tomas's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 16. Tomas filed suit against BMW AG and BMW of North America ("BMW NA"), alleging that he sustained complete blindness in his right eye when the airbag in his 2003 BMW 330i unexpectedly deployed. Doc. 1. The motion fails.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This litigation arises from an incident involving the personal injury of Tomas when he was riding as a front seat passenger in his 2003 BMW 300i. Tomas alleges that he sustained complete blindness in his right eye when the airbags unexpectedly deployed even though his vehicle made no "contact with any other

1

vehicle or property." Doc. 1 at 1,5. Tomas filed this suit against BMW NA and its indirect parent company BMW AG seeking actual and punitive damages for relief. Doc 1. at 2, 7-18.

BMW AG maintains that it is a holding company with its principal place of business in Munich, Germany and, as Tomas conceded, that it has no direct contacts with Alabama. Docs. 1 at 2; 27 at 8. Accordingly, BMW AG has moved to dismiss for lack of personal jurisdiction. Doc. 16. Tomas sought jurisdictional discovery to respond to the motion, doc. 18, which the court denied. Doc. 24. Thereafter, Tomas responded to the motion conceding general personal jurisdiction and maintaining that specific personal jurisdiction exists. Doc. 27 at 8. BMW AG has filed its reply, doc. 28, and as a result, the motion is ripe for review.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). After the defendant challenges jurisdiction with affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*

*ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). If, however, "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (quoting *Meier*, 288 F.3d at 1269).

### III. ANALYSIS

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000). Under its long-arm statute, "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Id.* at 1355–56 (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2(b). The Due Process Clause accepts two types of personal jurisdiction—"general" and "specific" personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853 (2011). For personal jurisdiction over a non-resident defendant, the Due Process Clause "only requires" that the person or entity has sufficient "minimum contacts" with that state and the suit does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v.*

3

*Woodson*, 444 U.S. 286, 291 (1980) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Relevant here, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.*, 444 U.S. at 297–98. However, mere knowledge or expectations that a product will wind up in the forum state is insufficient to create personal jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). Rather, purposeful availment generally requires showing that the defendant "targeted the forum" state. *Id*. at 882 (finding no personal jurisdiction over an English manufacturer who utilized an independent U.S. distributor that distributed only four machines to the state of New Jersey). In the Eleventh Circuit, the "stream of commerce test remains good law" and minimum contacts are likely to exist where "a high-volume seller puts its products into the stream of commerce knowing those products would end up in the forum state, even if that seller had no other contacts with the forum state." *Smith v. Poly Expert, Inc.*, 186 F. Supp. 3d 1297, 1303 (N.D. Fla. 2016).

The jurisdictional facts here are fairly straightforward and undisputed. Unlike its American subsidiary company, BMW AG has no direct dealings with the state of Alabama. Doc. 16-4 at 3-5. It does not own any property, maintain a

4

sales force, or advertise in the state. *Id.* Tomas asserts that BMW AG is nonetheless subject to specific jurisdiction because it "put[s] its vehicles that it designs, tests, and manufactures into the 'stream of commerce' by selling the vehicles to its wholly owned subsidiary and exclusive distributor, BMW NA, to distribute to its dealership network throughout the U.S. market, including Alabama." Doc. 27 at 8. Taking all reasonable inferences in favor of Tomas, the "contemporary commercial circumstances" and "economic realities of the market" that BMG AG "seeks to serve" reveal that this court may exercise jurisdiction. *McIntyre*, 564 U.S. at 885, 893.

BMW AG's argument, that no personal jurisdiction exists because it does not control the distribution and operations of BMW NA and therefore has no control over where the vehicles are distributed, *see* doc. 16 at 3, 6, is unpersuasive for two reasons. First, BMW AG "manufacture[s] and design[s] vehicles," including the vehicle in this case, and then sells hundreds of thousands of BMW branded vehicles to BWM NA each year. *See* doc. 16 at 1, 15; doc. 27-4 at 12. BMW NA, in turn, "sells those vehicles, at wholesale, to its authorized dealers in Alabama." Doc. 16 at 2. Thus, BMW AG obviously contemplates that some of its vehicles will make their way to Alabama. *See King v. Gen. Motors Corp.*, 2012 WL 1340066, at *7 (N.D. Ala. Apr. 18, 2012) ("GM Canada utilized its parent corporation to distribute hundreds, if not thousands, of vehicles to the state of

Alabama, including the vehicle at issue."). Second, BMW AG appended to Tomas's vehicle a sticker with a VIN number and notice that "this vehicle conforms to all applicable U.S. federal motor vehicle safety, bumper and theft prevention standards." Doc. 27-3 at 2. This court has found that compliance with federal regulations "equates manufacturing a product 'in anticipation of sales in' Alabama." *King*, 2012 WL 1340066, at *7 (quoting *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987)). Accordingly, BMW AG "seeks to serve" in Alabama by specifically manufacturing BMW vehicles in compliance with federal regulations. *Id.* (quoting *McIntyre*, 564 U.S. at 885).

Furthermore, this court recently found that jurisdiction exists where a foreign auto manufacturer had not:

> transacted any business in Alabama; been involved in any business activities in Alabama; paid any taxes to Alabama, made any contracts with Alabama; owned, used, or possessed any real estate situated in Alabama; maintained any offices, manufacturing plants, or equipment in Alabama; had any directors, officers, employees, or agents based in Alabama; had a bank account in Alabama; had a telephone number, mailing address, or Employee Identification Number ("EIN") based in Alabama; or directed any advertising or marketing efforts to residents or business in the United States, including Alabama.

*Johnson v. Chrysler Canada Inc.*, 24 F. Supp. 3d 1118, 1120-21 (N.D. Ala. 2014) (internal punctuation edited). The court found it had jurisdiction over the defendant, in part, because, as is the case here, the foreign manufacturer sold its

vehicles to a related entity, which it knew to have "a nationwide distribution channel in the United States." *Id.* ("Chrysler Canada knew that Chrysler United States, through its dealer network, had a nationwide distribution channel in the United States" and should have "expected that at least some of the vehicles it assembled would likely be sold in the state of Alabama.") (internal quotations omitted); *see also Graham v. Hamilton*, 2012 WL 893748, at *4 (W.D. La. 2012) ("GM Canada places over 800,000 vehicles into the U.S. market each year, indicating that many of GM Canada's vehicles would likely be sold in Louisiana.").[1]

To close, BMW AG cannot "plead ignorance of the markets it explicitly targets and serves." *King*, 2012 WL 1340066, at *7. Viewing all reasonable inferences in favor of Tomas, BMW AG "possesses more than some vague awareness that its products *might* reach U.S. markets" when it specifically designs vehicles in compliance with federal regulations and its subsidiary corporation directly sells the manufactured products to markets including Alabama. *Id.* Therefore, BMW AG's contacts with Alabama are such that it should "reasonably anticipate being haled into court [here] for claims arising out of" the vehicles it

---

[1] BMW AG's reliance on *Hinrichs v. Gen. Motors of Canada, Ltd.*, 222 So. 3d 1114 (Ala. 2016), is misplaced. The Alabama Supreme Court held that no jurisdiction existed, in part, because it could not find "any case in which a trial court has exercised specific jurisdiction over a foreign manufacturer arising from its sale of an allegedly defective vehicle in a foreign jurisdiction to a separate entity in the foreign jurisdiction *unless the vehicle was ultimately sold in the forum state*." *Id*. In contrast, the vehicle in this case—although originally sold in Connecticut—was sold in Alabama six times. *See* doc. 16-3.

manufactures and sells to BMW NA. *Ruiz de Molina*, 207 F.3d at 1357. Finally, Tomas and Alabama's interests are high in this case as the incident occurred in Alabama to an Alabama resident. Consequently, exercising jurisdiction over BMW AG "does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp.*, 444 U.S. at 291.

## **CONCLUSION**

Consistent with this opinion, BMW AG's motion to dismiss, doc. 16, is **DENIED**.

**DONE** the 24th day of August, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE